MERRIMACK.

---

PHILBRICK *v.* SHAW.

A deputy sheriff is not bound to assume the burden of defending a suit brought against the sheriff to determine a controversy betwen A and B as to whether goods attached by him on writs in favor of both were first attached on the writ of A, or on that of B; but A, having knowledge of the suit, and having given the deputy a bond against any loss that might result to him from applying the property on A's execution, is the sole defendant in interest as much as though the suit were against himself or the deputy.

Neither the deputy, nor a surety on his official bond, is estopped from claiming the indemnity by the returns on the writs, which show A's attachment to have been first.

IN EQUITY. A demurrer to the bill having been overruled, the facts were found by the court. Personal property of Kayes was attached by Haynes, a deputy sheriff, on a writ in favor of Shaw, the defendant, and on a writ in favor of Smith; and each creditor claimed that his own attachment was made before the other's. Each creditor obtained judgment, and each gave his execution to Haynes, and directed him to apply the attached property thereon. Shaw gave Haynes a bond to indemnify him for levying Shaw's execution according to Shaw's order. Haynes applied the property on

7*

Shaw's execution, and died insolvent. Smith, alleging the priority of his attachment, sued Burnham, the sheriff whose deputy Haynes was, for Haynes's refusal to levy Smith's execution, and recovered a judgment which Burnham satisfied. Philbrick, being a surety on Haynes's official bond, was sued by Burnham for the amount paid by Burnham to Smith. Philbrick notified Shaw to defend the action. Shaw did not defend it; and Burnham recovered a judgment which Philbrick satisfied. Shaw was not cited to defend the first suit, *Smith* v. *Burnham*, but he had knowledge of it, and was a witness at the trial of it.

On Smith's execution against Kayes, Haynes made return that " the personal property returned as attached on the original writ in this suit, subject to a prior attachment on a writ in favor of W. G. Shaw," had been applied on Shaw's execution. The defendant claims that the officer, if alive, would be estopped by his return to deny the priority of the defendant's attachment, and that the officer's surety, the plaintiff, is estopped.

The defendant offers to prove, by record and oral evidence, that his attachment was first; that he was induced to give the bond of indemnity by the false and fraudulent representation of the officer that the defendant would incur no risk by giving the bond because his attachment was first; and that many times, before and after the bond was given, the officer asserted the priority of the defendant's attachment.

*W. S. Ladd*, for the plaintiff. So far as Shaw is concerned, it matters not whether the judgment in favor of Smith against the sheriff, Burnham, be regarded as conclusive upon Haynes or not; for, if it was conclusive, it at the same time established conclusively the fact of a breach of the indemnity bond from Shaw to Haynes, inasmuch as the very fact of the rendition of that judgment constituted, in legal contemplation, loss, damage, and costs to Haynes, arising from his act in applying the property on Shaw's execution; that is, the judgment is of itself the very thing the bond was given to protect him against. If, on the other hand, that judgment was not conclusive upon Haynes, it could not have been conclusive upon his surety, Philbrick; and so, in the suit of *Burnham* v. *Philbrick*, the whole matter was open to be tried over again. But Shaw was notified to come in and make defence to that suit, which he omitted to do; wherefore he is concluded by the judgment rendered therein against Philbrick. *Littleton* v. *Richardson*, 34 N. H. 179, 187. There is, therefore, no ground upon which the defendant can be heard to say in this case that his attachment was first.

A sufficient answer to the claim, that Philbrick is estopped by Haynes's return on the writs to say that Shaw's attachment was not first, is, that it has been twice adjudicated,—once, certainly, when Shaw was called on, and had an opportunity to show that the fact was otherwise, if he could,—that his attachment was not

first, but second. The only trouble with this point is, that the estoppel is exactly the other way from what the defendant imagines. He is estopped by the judgment in *Burnham* v. *Philbrick*, if not by the judgment in *Smith* v. *Burnham*, to assert the priority of his attachment.

Shaw found out, by the result of the suit *Smith* v. *Burnham*, in which he was a witness, if he did not know before, that his attachment was not first, and he then knew (if he now knows) that the representations of Haynes on the subject were false; and he then knew, as he now knows, provided there is truth in his claim as stated in the case, that the money which he received from the sale of the property did not belong to him. Why has he kept it? Why did he not hand it over, or offer to hand it over, to Burnham, when he found that it was not his? Is it thought that he can with one hand hold on to the money, and with the other destroy the bond? In that document, after reciting the suits, judgments, and executions in favor of himself and Smith against Haynes, the defendant says,—"And certain personal property, a schedule of which is hereto annexed, was attached on both the original writs in said actions, and both of said plaintiffs [himself and Smith] claim a priority of attachment of said personal property, and the said Shaw has demanded that the same shall be levied upon by virtue of his execution, and said Smith has demanded of said Haynes that the same shall be levied on by his execution, and said Haynes has declined to levy the same upon said Smith's execution. Now if," &c. To allow the defendant now to go into proof that he was induced to give the bond by the alleged false representations of Haynes, would, to all practical intents, be allowing him to contradict his own recitals in that instrument; for in it he declares that Smith was claiming the property, and by it he undertakes to save Haynes harmless in case that claim prevails.

But suppose Shaw could now be heard to set up this claim against Haynes without returning to him the money which he obtained as the fruit of the wrong Haynes had thus volunteered to commit for his benefit, and suppose it were possible to conceive his present claim to be true: it does not follow that Philbrick, Haynes's surety, who was no party to the pretended fraud, must suffer the loss, while Shaw walks off with the money which that pretended fraud put into his pocket. There is no ground upon which it can be pretended that Haynes himself would be precluded by his alleged misrepresentations from recovering on the bond, unless it be that of an estoppel. The very contingency and loss against which the bond undertakes to provide have happened. Now Philbrick had nothing to do with inducing Shaw to sign it. Shaw did not change his position by reason of any act of Philbrick's, however it may have been with respect to Haynes. Haynes's acts or declarations cannot work an estoppel against Philbrick. So far as Philbrick is concerned, it makes no difference how the bond happened to be given.

He may say, simply, It was given, its condition has been broken, I am in equity entitled to the security thus given to my principal, who was acting in the matter both as a public officer and as the agent of Shaw.

*W. L. Foster* and *J. Y. Mugridge,* for the defendant. In *Smith* v. *Burnham,* the cause of action was the alleged default of Haynes in levying Shaw's execution, and returning the execution of Smith unsatisfied; and there can be no doubt that one of the issues tried in that action was the question of priority of attachment as between Smith and Shaw. To that action Shaw was an entire stranger, and the record of the judgment in that suit is not evidence against him concerning the merits and conclusions of the issue involved in that proceeding and judgment. The judgment was conclusive upon Haynes, the deputy of Burnham, by virtue of the relations of Burnham and Haynes as sheriff and deputy, and also upon Philbrick as surety for Haynes upon his bond to Burnham. In some cases parties liable over, by way of indemnity, are bound by judgment against the person to whom they are so liable, even without notice, as where they have so stipulated with the latter. Such cases will of course depend upon the construction to be placed on the contract of indemnity. Big. Est. 67. The contract of indemnity on the part of Haynes and Philbrick with Burnham is expressed in the condition of the deputy's bond,—" to indemnify and save harmless the said Burnham from all loss, damages, and costs that may happen to him by reason of the acts, nonfeasances, misfeasances, or neglects of him, the said Haynes, in his said office of deputy sheriff." And though Haynes and Philbrick were thus estopped by the judgment in *Smith* v. *Burnham,* Shaw, who was in no privity nor contract relation with Burnham, was not thus estopped. *Littleton* v. *Richardson,* 34 N. H. 179, 187. Shaw was not cited in to defend that suit, but he had knowledge of it, being present as a witness at the trial. Why is he not, then, bound by the result? Plainly, because, though a witness upon the trial, he had no control of the case. Natural justice requires that he should be informed of the intention of the defendant to make him responsible for the result; that he should understand that he is made a party to the suit, and thus be enabled to employ counsel and maintain and conduct his own defence. Therefore the question, whether one who appeared as a witness in a former action is estopped in a subsequent suit between one of the parties and the witness by the judgment in the former suit, has been repeatedly decided in the negative. *Yorks* v. *Steele,* 50 Barb. 397 ; *Case* v. *Reeve,* 14 Johns. 79 ; *Castle* v. *Noyes,* 14 N. Y. 329, 332 ; 1 Gr. Ev., *s.* 523.

If the defendant indemnified Haynes, that indemnity did not entitle this plaintiff or Burnham to sue this defendant upon it, nor upon any default for which the indemnity was security. The liability upon the defendant's bond was to the obligee only *( Turk* v. *Ridge,*

41 N. Y. 201; *Johnson* v. *Foster*, 12 Met. 167), and that liability would be discharged upon proof either that the obligor's attachment was first, or that he had been induced to give the bond by the fraudulent or false representations of the obligee.    Whether or not the plaintiff, as surety upon Haynes's bond to the sheriff, is entitled to be subrogated to the rights of Haynes upon Shaw's bond to the latter, depends upon the facts establishing the equities to be determined in this case.    If Shaw's attachment was first, or if he was deceived by Haynes, and so Haynes is estopped, either by his representations to Shaw, or by his return upon Smith's writ, to say it was not first, the plaintiff is not entitled to have the defendant's bond to Haynes set apart for his benefit, nor judgment entered in his favor thereon for the amount he has paid to Burnham.    Upon the questions which determine this claim of the plaintiff, Shaw is entitled to be heard, not merely as a witness in a proceeding which he could not control, but as a party with all the rights which a party in a suit is entitled to.    He had no such opportunity upon the trial of *Smith* v. *Burnham*, and was as much a stranger to that litigation, and was no more bound by it, than was the defendant in *Burrill* v. *West*, 2 N. H. 190, 192.    And see *Fogg* v. *Plumer*, 17 N. H. 112; *Warren* v. *Cochran*, 27 N. H. 339, 342.    Even if there were any connecting link of privity between Shaw and Burnham by virtue of Shaw's bond to Haynes and Haynes's bond to Burnham (a proposition which cannot be advanced), Shaw could not be bound by the judgment against Burnham without due notice and an opportunity to defend.    *Thrasher* v. *Haines*, 2 N. H. 443.

If the judgment in *Smith* v. *Burnham* was conclusive as against Haynes and Philbrick, it by no means follows that (as the plaintiff now contends) it established conclusively, as against Shaw, the fact of the breach of his indemnity bond to Haynes.    That was a question which Shaw was not precluded from contesting.    Philbrick, by virtue of his contract of indemnity with Burnham, had such an interest in that suit as required him to vouch in Shaw if he intended to raise the question of Shaw's ultimate responsibility, but he did not do it; and it was afterward too late, and altogether inequitable, to call Shaw to defend the suit of *Burnham* v. *Philbrick;* because, if he had come in, it is manifest the plaintiff would have then contended, as this plaintiff now contends, that he was concluded by the judgment in *Smith* v. *Burnham*.    But if, as we insist, he was not so concluded, he was nevertheless in no position to re-try the issue which had been tried in *Smith* v. *Burnham*, because in *Burnham* v. *Philbrick* the question was no other and no more than, What amount of money had Burnham been compelled to pay upon a legal judgment?    There was really no issue involved in the suit of *Burnham* v. *Philbrick*.    The issue which resulted in a judgment against Burnham had already been settled, so far as Philbrick was concerned; and the subsequent suit of *Burnham* v. *Philbrick* was merely a proceeding to collect an admitted indebtedness.    There was

nothing in that stage of litigation for Shaw to contest, and it was an idle ceremony for Philbrick to call him, or for Shaw to come in.

The plaintiff contends that Shaw should return the money which he has received as the avails of his execution, before he should be permitted to defend this suit. Return it to whom, and why? It belongs either to the defendant, or to Smith. The question of right and ownership has not been settled in a way to bind Shaw. If he can be permitted to show that his attachment was first, then Smith and not Shaw should refund.

The prayer of the plaintiff's bill is, that the bond of Shaw to Haynes may be set apart for the benefit of Philbrick. If Shaw's contention is founded in truth, equity should not grant the prayer. If Shaw is not estopped by the judgment in *Burnham* v. *Philbrick*, he may show that his attachment was first, or that he was deceived by Haynes, and persuaded to give a bond which he would not otherwise have given. And upon the latter question he may show not only Haynes's verbal declarations, but his written admission upon Smith's writ, by all which he is estopped, and Philbrick also, as surety against his principal's malfeasance in office. The plaintiff cannot ask that a bond should be set apart for his benefit which is vitiated by the fraud of the obligee. If the defendant's contention is founded in truth, it ought to avail in equity. If he may show that his attachment was first, he ought to be allowed to keep the money. If he may not be permitted to show it, he ought not to be precluded from resisting liability upon the bond. The result is, that one of two innocent parties has got money which does not belong to him; and until Shaw may be heard in his own defence, it will never be determined, in a proceeding in which all concerned have been fairly represented, which is that party. If it must always remain in doubt, then Philbrick and not Shaw should sustain the loss occasioned by the fault of Haynes.

The judgment in *Smith* v. *Burnham* was conclusive upon Philbrick as well as Haynes, if either of them had legal notice of it. *Fay* v. *Ames*, 44 Barb. 327. It was, moreover, conclusive, even without notice, upon the essential construction of their bond to Burnham. Philbrick, therefore, in the suit of Burnham against him, could not litigate over again the liability of Burnham in the former action, nor could Shaw, when vouched in, make any defence which Philbrick could not be permitted to make. Shaw, therefore, has not had his day in court, and if he must give up this money he must do so without an opportunity to show that it rightfully belongs to him.

DOE, C. J. The defendant having an execution against Kayes, directed Haynes, a deputy sheriff, to levy it upon certain property of Kayes, and gave the officer a bond to indemnify him against all loss, cost, and damage that should be caused by his obeying Shaw's order to make the levy. The bond of indemnity is written evidence of a promise that would be implied from the defendant's order.

Smith, as well as the defendant, having an attachment of the property, and a controversy arising between them as to priority of attachment, the defendant necessarily assumed the responsibility of maintaining his own precedence. In that controversy Shaw and Smith were the only parties in interest. In paying the defendant's execution out of Kayes's property, Haynes acted as the defendant's agent: his legal fee was what it would have been if he had paid the proceeds of the property to Smith instead of the defendant. As between Shaw and Haynes, and for the purpose of this suit, the levy was the act of Shaw. Philbrick, as surety on the officer's official bond, occupied a position as disinterested as that of the officer, and is protected by the bond given by Shaw. If Haynes were alive and solvent, and the judgment which Philbrick paid had been rendered against Haynes and Philbrick, a suit of Philbrick against Haynes, and another suit of Haynes against Shaw, would be unnecessarily circuitous. Philbrick's remedy is not destroyed by the insolvency and death of Haynes.

The bond given by the defendant was to indemnify the officer against the consequences of his levying the defendant's execution for the defendant's benefit in obedience to the defendant's order. It does not contain a stipulation that Shaw is not bound to indemnify him unless the priority of Smith's attachment is established in a suit in which Shaw is a party of record, or in a suit which Shaw is notified to defend. The obligor and obligee understood that, if the question of priority was litigated, it would be tried in a suit brought by Smith; and that, whomever Smith should sue, Shaw's defence of the action should not be prevented by Haynes's withholding information or consent. They did not understand that Haynes was to assume the defence, or notify Shaw to assume it. Their understanding was stated in the bond; and the bond did not put upon the disinterested officer the duty of resisting any suit for the benefit of the interested creditor, nor require the former to serve upon the latter a formal summons to attend to his own business of maintaining the priority of his lien. The bond did not make it material in what suit the question of priority was raised. It was a matter of indifference to Shaw and his officer whether Smith brought his suit against Shaw, Haynes, or Burnham. Against whomever he might elect to bring it, the question of priority would be the only matter in controversy; and on that question, as Smith would be sole plaintiff in interest, so Shaw would be sole defendant in interest. The bond contains no evidence that the parties understood the obligee was to do anything more than give the obligor such necessary information and consent as he could give to enable the obligor to properly defend the anticipated suit.

The obligee did all he undertook to do. He withheld neither information nor consent. He put no obstacles in the way of the obligor's maintaining the priority of his lien. Shaw, knowing that Smith had exercised his right of bringing his suit against Burnham

instead of Shaw or Haynes, was bound by his bond to defend Haynes against all loss, cost, and damage that might fall upon him from that suit. The non-assumption of the defence by the sole defendant in interest was a neglect of his duty; and by his neglect he has prolonged, through three successive suits, a controversy that should have been settled in the first one. In the first suit, *Smith* v. *Burnham*, neither Shaw, nor Haynes, nor Philbrick was a party of record: and neither Haynes nor Philbrick had any more control of it than Shaw. If Shaw was not concluded by the judgment because he was not notified to assume the defence, Haynes and Philbrick were not concluded by it, for the same reason. And if for that reason Philbrick could have contested the priority of Smith's attachment in *Burnham* v. *Philbrick*, for the same reason Shaw could have contested it in the same suit; and having been notified to defend, he is bound by the judgment. It is therefore immaterial whether Shaw is, or is not, concluded by the judgment against Burnham. The plaintiff contends that the judgment against Burnham, satisfied by Burnham, and the judgment in *Burnham* v. *Philbrick*, satisfied by Philbrick, are the damage against which the defendant agreed to indemnify the officer, as the burning of insured property is, not an estoppel, but conclusive evidence of the damage against which the insurer agreed to indemnify the insured. *Parker* v. *Lewis*, L. R. 8 Ch. 1035, 1058, 1060. If such is the law, Shaw was bound to indemnify Philbrick without being requested to defend any suit of which he had knowledge, and which he would have been permitted to defend. If such is not the law, and if Philbrick and Shaw are not concluded by the judgment against Burnham, they are equally estopped by the judgment in *Burnham* v. *Philbrick*, the defence of which Shaw, being formally cited, was bound to assume.

The defendant's officer, obeying his order, was not estopped, and the officer's surety is not estopped, by the officer's returns of the attachments and executions, to claim the indemnity promised by the defendant.

The defendant offers to prove that the officer induced him to give the bond by asserting the priority of the defendant's attachment. Such evidence cannot vary the bond, reverse the contract, and put upon the obligee the responsibility assumed by the obligor. The defendant agreed to indemnify the officer for obeying the defendant's order. That is the legal meaning of the bond; and that meaning cannot be controverted by parol in this action. The defendant offers to prove that a fraud was perpetrated, not upon Smith, but upon the defendant. But it is not expedient to determine the possibility of such a fraud in a hypothetical case. The evidence will be received; and if any facts are found which the defendant claims amount to a fraud upon him, the law of that part of the case will be considered If such facts are not found, the plaintiff will be entitled to a decree.

*Case discharged.*

BLODGETT, J., did not sit: the others concurred.